# EXHIBIT A

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code |
|---|---|
| Department of Health & Human Services<br>attn: Office of Gen. Counsel Claims & Employment Law Branch<br>330 C Street, SW Switzer Building, Suite 2600<br>Washington, DC 20201 | Eric R. March, Jr., 52 Weaver Road, Manchester, CT 06042<br><br>Attorney Joel Lichtenstein: Koskoff, Koskoff & Bieder, 350 Fairfield Avenue, Bridgeport, CT 06604 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>07/13/1974 | 5. MARITAL STATUS<br>Married | 6. DATE AND DAY OF ACCIDENT<br>06/15/2015   Monday | 7. TIME (A.M. OR P.M.)<br>3:06 p.m. |
|---|---|---|---|---|

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

On June 15, 2015, Eric R. March, Jr. underwent an elective laparoscopic incisional/ventral hernia repair with mesh at the West Haven Campus of the Veteran's Administration in West Haven, Connecticut. Dr. Robert Schlessel was the attending surgeon and he was assisted by Marko Lujic MD and Daniel Chang MD. According to the operative report, multiple adhesions were encountered. The adhesions were taken down with use of scissors, electrocautery and blunt dissection. The take-down took approximately 90 minutes. Post-operatively, Mr. March experienced severe abdominal pain which, (continued on page 2)

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

NONE

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED (See instructions on reverse side).

N/A

10. PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

As a consequence of the bowel injury, Mr. March spent 3 weeks in the hospital and had 2 operations to repair his abdomen. He is left with severe diastasis recti and a non-functioning abdominal wall all leading to significant limitations in the simplest of physical activities; due to lack of abdominal musculature that gives core strength Mr. March cannot laugh, cough, sneeze without pain, has a 10 lb lifting restriction, is unable to run, jump, play with and hug his children, (continued on page 2)

11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Dina March | 52 Weaver Road, Manchester, CT 06042 |

12. (See instructions on reverse).  AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights) |
|---|---|---|---|
| 0.00 | 15,000,000.00 | 0.00   N/A | 15,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side) | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| [signature] | 203·336-4421 | 4/19/17 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

| INSURANCE COVERAGE |
|---|
| In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property |

15. Do you carry accident Insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☒ No

N/A

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes  ☒ No   17. If deductible, state amount.

N/A

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts)

N/A

19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).  ☒ No

N/A

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. Principal Purpose: The information requested is to be used in evaluating claims.
C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

SF 95

Page 2

Continued from Section 8

at times, was difficult to control despite the administration of narcotic analgesics. Mr. March developed left lower abdominal swelling. He had intermittent tachycardia. His white blood cell count initially rose, then dropped and then started to rise again on the day of hospital discharge. He was discharged home with significant abdominal and perineal swelling. For the next forty-eight hours, Mr. March was so debilitated all he could do was sleep. He presented to the Manchester Memorial Hospital on June 23, 2015 with a temperature of 103 degrees (Fahrenheit). He was diagnosed with an abdominal abscess and cellulitis. An abdominal CT Scan was consistent with perforated viscus and infection. He was taken to surgery for exploratory laparotomy, removal of infected mesh, lysis of adhesions and debridement of infected tissues. The operating surgeon found an extensive amount of free intra-abdominal air and a large amount of feculent fluid with obvious bowel contents in the abdominal peritoneal cavity. The bowel was extensively inflamed and portions of it could not be fully examined. The abdomen was left open. Mr. March's white blood cell count was critically elevated. He was taken back to the operating room two days later. The distal jejunum was suspicious for a leak and this portion of the small bowel was resected. Again, due to extensively swelling of the intestines the abdomen was left open. Mr. March endured weeks of treatment with antibiotics and a wound VAC. Over time his extensive abdominal wound granulated and eventually closed. He has been left with a large broad-based ventral abdominal hernia with diastasis of the rectus musculature.

We have attached an opinion letter from our consultant physician who is board certified in both general surgery and surgical critical care. In his opinion, Dr. Schlessel and/or his assistants caused a thermal burn during the take down of adhesions during the surgery on June 15, 2015. This thermal bowel injury was not recognized at the time it occurred. The thermal bowel injury led to a breakdown of the integrity of the bowel wall which further led to perforation and spillage of bowel contents.

Continued from Section 10

Mr. March is unable to participate in household cleaning and maintenance, unable to tolerate standing for long periods of time, suffered through severe pain related to multiple wound vac changes and has endured a protracted time-period to allow his body to heal from the inside out. He wears an abdominal binder to keep his abdominal organs from falling out as there is only a thin layer of skin holding his organs in. He requires assistance in the shower because he cannot stand for any length of time without his abdominal binder. He has nerve damage which causes electric type shocks which makes his body twitch. He will require high risk surgery to reconstruct his

abdominal wall if he wants to return to a normal functional life. Taking a deep breath is difficult. Mr. March suffers from PTSD and is under the care of a psychiatrist. He has short term memory loss and forgetfulness. He is unable to work and has been given a 100% disability rating. Lastly, Mr. March is unable to participate in full sexual relations with his wife, Dina March. An ejaculation causes abdominal cramping and abdominal tremors.

PHYSICIAN'S OPINION
PURSUANT TO C.G.S., SECTION 52-190a

*[NOT SUBJECT TO GENERAL DISCLOSURE]*

Dear Mr. Lichtenstein,

Thank you for asking me to review the matter of Eric March. As you know, I have board certifications in both general surgery and surgical critical care. I have been in practice for more than twenty-five years and as a general surgeon, I have performed numerous operations including elective hernia repairs. This case involves Robert Schlessel M.D. who operated on Mr. March in June 2015. You previously have advised me that Dr. Schlessel is board certified in general surgery. I am familiar with the standard of care in 2015, in the United States, for surgeons who perform elective hernia repairs.

I have read and reviewed the following medical records pertaining to Eric March:

1) West Haven VA Hospital admission, 2015
2) Manchester Memorial Hospital admission, 2015
3) Suede Surgical Care office visit, July 31, 2015

On CD:  CT Scan abdomen/pelvis, dated June 23, 2015
        Gastrografin enema, dated June 25, 2015

According to the medical records, Mr. March had sigmoid resection and colostomy in 2011. In 2012, the colostomy was reversed. Shortly after the reversal, he noted incisional site hernias which initially were not bothersome. In April 2015, Mr. March presented to his primary care physician for evaluation of the hernias. Surgical consultation was recommended. According to the Surgical History & Physical progress note, Mr. March reported increasing abdominal pain at the peri-umbilical hernia site both with coughing and physical activity. On examination, there was a palpable defect, easily reducible at both the peri-umbilical and left lower quadrant (LLQ) site. An abdominal/pelvic CT Scan showed that the bowel was involved in the hernias. Laparoscopic incisional hernia repair with mesh was recommended.

On June 15, 2015, Mr. March was taken to the operating room at the West Haven Veteran's Administration hospital for laparoscopic ventral hernia repair. According to the operative report, Dr. Robert Schlessel was the attending surgeon and he was assisted by two hospital residents. The surgeons encountered multiple adhesions to the midline and at the

LLQ where the old ostomy site was located. Lysis of adhesions took 90 minutes and according to the operative report, "There was no sign of bowel perforation or bowel injury or deserosalized bowel visible on inspection." Following lysis of adhesions, the multiple abdominal wall defects were covered with one large piece of mesh. The operation was concluded and Mr. March was moved to the recovery room.

Post-operatively, Mr. March had an uneventful recovery. He was started on clear liquids and after some adjustments to his medication regimen his pain was well controlled. His diet was advanced and he passed both flatus and stool. He did develop LLQ abdominal wall swelling that was thought to be a seroma. He also had scrotal edema. On the fifth post-operative day (June 20th), he was discharged home on Oxycodone, Valium, Colace and a low residue diet. His temperature at discharge was 99.6 and his white blood cell count (WBC) was slightly elevated from the day before at 12.7.

According to the Manchester Memorial Hospital admission records, Mr. March presented to the emergency department (ED) on June 23, 2015 with redness, swelling and yellow discharge from the abdominal wall for the past 24 hours. His WBC was 38.0 and an abdominal/pelvic CT Scan was interpreted as consistent with perforated viscus with two abscesses. Intravenous antibiotics were started in the ED and Mr. March was evaluated by attending surgeon, Dr. Maher Suede. Dr. Suede took Mr. March to the operating room later that day for exploratory laparotomy with removal of infected mesh, lysis of adhesions and debridement of infected wounds. There was an extensive amount of free intra-abdominal air and a large amount of feculent fluid with obvious bowel content in the abdominal peritoneal cavity.   Dr. Suede indicated in his operative report that the feculent fluid did not look like small bowel succus entericus. A complete examination of the small bowel was limited by the extensive amount of inflammatory reaction. All of the abscesses were debrided. The bowel was inspected before closing and Dr. Suede indicated he was not able to find the source or the site of his enteric injury. Due to the amount of bowel swelling the abdomen was left open and covered with biological mesh with plans on returning Mr. March to the operating room in 48 hours for a second-look laparotomy and closure of his abdomen.

On June 26, 2015, Mr. March was returned to the operating room where he underwent an exploratory laparotomy and small bowel resection. Dr. Suede was the attending surgeon

and together with his assistant, the small bowel was inspected for perforations. No perforations were identified, however, there was an area involving a small bowel loop that was stained with bile, therefore suspicious. Believing this was the site of the leak, the surgeons decided to resect that area of the small bowel. On pathology, a perforated diverticulum associated with leakage of intestinal contents was identified. In his post-operative assessment, Dr. Suede documented that Mr. March had a small bowel perforation secondary to small bowel diverticulum that was "most likely iatrogenic after laparoscopic ventral hernia repair."

In my opinion, the cause of Mr. March's bowel leak was due to a thermal bowel injury which occurred during the 90-minute lysis of adhesions by Dr. Schlessel and the hospital residents. According to their operative report, the surgical team used scissors, blunt dissection and electrocautery to lyse the dense adhesions. In a thermal burn, the tissue remains structurally intact for 4 to 7 days after which time the tissue loses its integrity and begins to break down. In this case, the tissue breakdown was transmural and resulted in a perforation of the bowel wall which allowed the bowel contents to spill out into the abdominal cavity. More likely than not, the perforation sealed itself off and that is why Dr. Suede was not able to find the perforation. Mr. March was initially stable post-operatively and his symptoms leading to admission to Manchester Memorial Hospital began on the 7th post-operative day. This is consistent with the natural course of a thermal bowel injury. Had Mr. March suffered an iatrogenic small bowel diverticulum injury as suggested by Dr. Suede, signs and symptoms of bowel perforation would have begun several days earlier.

This type of thermal bowel injury is relatively easy to identify given the color change that occurs to the tissue once it is burned. The standard of care requires the surgeon(s) using electrocautery to inspect the tissue surrounding the area looking for areas of thermal burn and look for burned tissue. Dr. Schlessel and/or the hospital residents failed to identify that the small bowel was burned while using electrocautery, therefore, Dr. Schlessel and/or the hospital residents departed from the accepted standard of care.

A thermal injury to the bowel is simple to repair. The standard of care requires to surgeon to repair the injury at the time it occurs by inverting the injured tissue into the lumen of the bowel. Several sutures are placed over the healthy tissue keeping the inverted burned

tissue in place. In that manner the integrity of the bowel wall is maintained and leaks are prevented. In this case, Dr. Schlessel and/or the hospital residents failed to repair the thermal injury at the time it occurred, therefore, Dr. Schlessel and/or the hospital residents departed from the accepted standard of care.

Based upon my review, it is my opinion that there appears to be evidence of medical negligence on the part of Dr. Robert Schlessel and the West Haven Veteran's Administration hospital. The opinion stated herein is based upon the information available to me at this time. Should other information and evidence become available, I reserve the right to supplement and/or amend this opinion.