UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERIC MARCH, JR. & DINA MARCH, | : | No. 3:17-cv-2028 (VAB) |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| *Defendant*. | : | December 4, 2020 |

# Plaintiffs' Proposed Statement of Facts and Conclusions of Law

The Plaintiffs hereby submit the following proposed statements of fact and conclusions of law. Plaintiffs have provided citations to specific portions of the transcripts in support of the facts as well as references to full exhibits. Plaintiffs have not, however, cited to every portion of the transcript that supports each fact. In addition, many of the facts are not disputed between the parties, but citations have been provided as evidence was admitted on those issues.

## I. Duty

1. Eric March's date of birth is July 14, 1974.

   **Citation:** Exhibit 2 (VA records)

2. In 2015, Eric March was diagnosed with a ventral hernia.

   **Citation:** Ex. 2

3. On June 15, 2015, Dr. Robert Schlessel and Dr. Marko Lujic performed a laparascopic ventral hernia repair on Mr. March.

   **Citation:** Ex. 2; Dr. Schlessel Tr. 164:3-164:6; Dr. Lujic Tr. 76:9-76:12

1

4. That surgery was performed at the Veterans Administration Medical Center in West Haven, Connecticut.

**Citation:** Ex. 2; Dr. Schlessel Tr. 159:16-159:18; Dr. Lujic Tr. 75:19-75:23

5. Dr. Schlessel and Dr. Lujic were acting as agents/employees of the VA.

**Citation**: Dr. Schlessel Tr. 159:16-159:18; Dr. Lujic Tr. 75:19-75:23

6. The surgery involves the removal of adhesions between the small bowel and the abdominal wall. The removal of adhesions involves sharp dissection, blunt dissection and electrocautery, which uses heat to burn away adhesions.

**Citation:** Ex. 2; Dr. Schlessel Tr. 194:3-194:9, 202:15-202:24; Dr. Lujic Tr. 83:2-83:7, 85:1-85:15; Dr. Smith, Tr. 374:2-374:5, 379:19-379:21

7. Dr. Schlessel and Dr. Lujic owed a duty of care to Eric March to provide medical services in accordance with the prevailing professional standard of care.

**Citation:** **Jarmie v. Troncale, 306 Conn. 578, 606 (2012) ("[U]nlike most duties, the physician's duty to the patient is explicitly relational: physicians owe a duty of care to patients."); Batista v. Jacobs, No. HHDCV096006080S, 2010 Conn. Super. LEXIS 1566, at *13 (June 23, 2010) (Sheldon, J.) ("[W]here a medical professional-patient relationship exists, the physician owes . . . a duty to diagnose and treat in compliance with the prevailing professional standard of care for that health care provider.").**

8. The FTCA provides in pertinent part: "[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal

injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

**Citation:** 28 U.S.C. § 1346(b) (2016); Devlin v. U.S., 352 F.3d 525, 530 (2d Cir. 2003); see also King v. U.S., 491 F. Supp. 2d 286, 292 (D. Conn. 2007); Reeves v. U.S., No. Civ. 3:97-cv-1198 (HBF), 2000 WL 33200258, at *4 (D. Conn. Dec. 19, 2000).

9. The FTCA also provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

**Citation:** 28 U.S.C. § 2674 (2016).

## II. Articulation of the Standard of Care

10. Connecticut General Statutes § 52-184c statutorily defines the standard of care in a medical malpractice case. Neuhaus v. DeCholnoky, 280 Conn. 190, 222 (2006). "Specifically, in order to establish medical negligence, a plaintiff must demonstrate that the defendant breached 'the prevailing professional standard of care for that health care provider." Id. (quoting Conn. Gen. Stat. § 52-184c(a) (2016)). "Section 52-184c (a) provides further clarity by defining the professional standard of care as 'that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." Id. Under Connecticut law, the relevant standard of care is based on a

national standard, not a local standard.  See Baranowski v. Safeco Ins. Co. of America, 119 Conn. App. 85, 95 n. 11 (2010) ("[M]edical care has moved from a statewide standard of care to a national standard of care, free of geographic limitations.").

11.     The standard of care for laparoscopic ventral hernia requires the surgeons to vigilantly, carefully and thoroughly inspect the bowel for injuries.  This is especially important when the surgeons use electrocautery, as they did here.  The danger of an undetected burn injury is a delayed perforation in the wall of the bowel, which can occur days after surgery.

**Citation:      Dr. Lujic Tr. 87:11-87:30, 96:10-96:19, 97:21-98:2; Dr. Schlessel Tr. 195:21-195:24, 195:18-195:20, 199:21-199:25, 201:6-201:9, 201:16-201:19; Dr. Smith Tr. 379:23-380:19**

### III.    Deviations from the Standard of Care

12.     Thermal injury to the small bowel is characterized by a change in color and texture of the tissue of the small bowel. It puckers and changes color.

**Citation:      Dr. Lujic Tr. 94: 18-95:6; Dr. Smith Tr. 378:9-378:18**

13.     The applicable standard of care requires the surgeon to carefully and thoroughly inspect the bowel for the appearance of a burn injury when electrocautery has been used.

**Citation:      Dr. Lujic Tr. 87:11-87:30, 95:20-95:24, 96:10-96:19, 97:21-98:2; Dr. Schlessel Tr. 195:21-195:24, 195:18-195:20, 199:21-199:25, 201:6-201:9, 201:16-201:19; Dr. Smith Tr. 379:13-379:21; Dr. Novitsky Tr. 581:3-6**

14. The standard of care requires the surgeons to inspect the bowel for injuries while the adhesions are being taken down; after the bowel is free of adhesions and at the end of the surgery, before closing the abdomen.

**Citation:** **Dr. Schlessel Tr. 206:2-206:7; Dr. Smith Tr. 379:23-380:10; Dr. Novitsky Tr. 580:11-581:6**

15. At the time of this surgery, Dr. Lujic was a 4th year resident.

**Citation:** **Dr. Lujic Tr. 75:19-75:23**

16. Because Dr. Lujic was a 4th year resident it is likely that he performed the surgery start to finish, with Dr. Schlessel standing by.

**Citation:** **Dr. Lujic Tr. 81:4-81:13; Dr. Schlessel Tr. 187:10-187:14**

17. Toward the end of the surgery on Eric March, it is likely that Dr. Schlessel stepped away from the surgical field and sat in the corner of the operating room.

**Citation:** **Dr. Schlessel Tr. 186:5-187:9**

18. During the surgery on Eric March, the surgeons did not inspect the bowel at the end of the surgery, before closing the abdomen.

**Citation:** **Ex. 2 (operative report, p. 466); Dr. Lujic Tr. 110:15-110:21**

19. During the removal of adhesions during this surgery, Mr. March suffered a thermal injury to his small bowel.

**Citation:** **Dr. Suede Tr. 38:2-38:3; Dr. Lujic Tr. 113:24-116:20; Dr. Schlessel Tr. 250:21-251:3; Dr. Smith Tr. 390:5-390:17**

20. Dr. Lujic and Dr. Smith failed to identify the intraoperative burn injury to Mr. March's small bowel.

**Citation:** Dr. Lujic Tr. 116:15-116:20, 149:14-149:20; Dr. Schlessel Tr. 252:22-253:1; Dr. Smith Tr. 390:10-390:17

21. That thermal injury went undetected until June 23, 2015.

**Citation:** Dr. Lujic Tr. 115:18-115:22; Dr. Schlessel Tr. 252:22-253:1; Dr. Smith Tr. 390:5-390:9

22. The failure to carefully inspect the bowel so as to identify the burn injury was a violation of the standard of care applicable to surgeons in 2015.

**Citation:** Dr. Smith Tr. 390:24-391:3

23. The failure to inspect the bowel an additional time at the end of the procedure was a violation of the standard of care applicable to surgeons in 2015.

**Citation:** Dr. Schlessel Tr. 197:15-197:16, 259:2-262:18; Dr. Smith Tr. 390:24-391:3; Dr. Novitsky Tr. 595:22-595:25

## IV. <u>Causation</u>

24. "The plaintiff must prove that any injury for which he seeks compensation from the defendant was caused by the defendant. Negligence is a proximate cause of an injury if it was a substantial factor in bringing the injury about. If the defendant's negligence contributed materially and not just in a trivial or inconsequential manner to the production of the injury, then his negligence was a substantial factor."

**Citation:** Conn. Model Civ. Jury Instructions, § 3.1-1 (citing <u>Winn v. Posades</u>, 281 Conn. 50, 56 (2007)

25. "Negligent conduct can be a proximate cause of an injury if it is not the only cause, or even the most significant cause of the injury, provided it contributes materially to the production of the injury, and thus is a substantial factor in bringing it

about. Therefore, when a defendant's negligence combines together with one or more other causes to produce an injury, such negligence is a proximate cause of the injury if its contribution to the production of the injury, in comparison to all other causes, is material or substantial."

      **Citation:** Conn. Model Civ. Jury Instructions, § 3.1-2 (citing <u>Boileau v. Williams</u>, 121 Conn. 432, 440 (1936) ("[A] defendant's negligence, to impose liability, must have been a proximate and substantial cause of the injury. . . .[I]f the negligence of only one of the defendants caused the collision [which produced the injury,] that defendant only would be liable, but if the negligence of both contributed in a proximate and material way to cause it, both should be held liable. . . . <u>Mahoney v. Beatman</u>, 110 Conn. 184, 197 (1929))

    26. The Defendant's failure to timely identify the thermal injury to Mr. March's bowel resulted in life-threatening peritonitis, the need for multiple surgical interventions, and permanent injuries.

      **Citation:** Exhibits 5-13 (subsequent medical treatment records); Dr. Suede Tr. 19:16-19:18, 38:6-38:11; Dr. Smith Tr. 391:8-391:16

    27. Had the thermal injury been identified, it would have been easily treated intraoperatively by "sewing over" the burn, thus avoiding any perforation in the bowel wall, infection, peritonitis and subsequent surgeries.

      **Citation:** Dr. Schlessel Tr. 195:12-195:17; Dr. Lujic Tr. 88:19-88:24; Dr. Smith Tr. 381:14-382:2

28. The Defendant's negligence was, more likely than not, a substantial factor in causing the damages described in the medical records, Exhibits 5-13 and by Mr. and Mrs. March at trial.

**Citation:** Dr. Smith Tr. 391:8-391:16

## V. <u>Damages</u>

29. The plaintiff is to receive fair, just and reasonable compensation for all injuries and losses, past and future, which are proximately caused by the defendant's proven negligence. The plaintiff must prove both the nature and extent of each particular loss or injury for which he seeks to recover damages and that the loss or injury in question was proximately caused by the defendant's negligence. Injuries and losses for which the plaintiff should be compensated include those he has suffered up to and including the present time and those he is reasonably likely to suffer in the future as a proximate result of the defendant's negligence.

30. In a personal injury action, there are two general types of damages: economic and noneconomic damages. Economic damages are monies awarded as compensation for monetary losses and expenses which the plaintiff has incurred, or is reasonably likely to incur in the future, as a result of the defendant's negligence. They are awarded for such things as the cost of reasonable and necessary medical care and lost earnings. Noneconomic damages are monies awarded as compensation for non-monetary losses and injuries which the plaintiff has suffered, or is reasonably likely to suffer in the future, as a result of the defendant's negligence. They are awarded for such things as physical pain and suffering, mental and emotional pain and suffering, and loss or diminution of the ability to enjoy life's pleasures."

Citation: Conn. Model Civ. Jury Instructions § 3.4-1 (citing <u>Tuite v. Stop & Shop Cos.</u>, 45 Conn. App. 305, 310-11 n.2 (1997))

VI. <u>Economic Damages</u>

31. As of the time of trial, Eric March had incurred medical costs of $181,401.82.

Citation: Ex. 17 (Summary of medical specials)]

32. Eric March's Life Expectancy at the time of the injury was 37.97 years; Dina March's life expectancy was 40.95 years.

Citation: Dr. Gary Crakes Tr. 691:17 – 692:13

33. Eric March is likely to need future medical and rehabilitative care, equipment and assessments as a result of the injuries he suffered due to the alleged malpractice. The Plaintiffs retained Darlene Carruthers, a certified life care planner, to analyze Eric March's likely needs.

Citation: Testimony of Darlene Carruthers

34. The plaintiffs retained Dr. Gary Crakes, an economist, to calculate the present value of the future cost of care, and the present value of Mr. March's loss of earning capacity.

35. According to Dr. Crakes, the present value of the future cost of care plan provided by Ms. Carruthers is $2,093,930.

Citation: Dr. Crakes Tr. 694:22-23

36. Dr. Crakes did different calculations for loss of earning capacity, based on work life expectancy to age 65 or 70. He also considered two base earnings numbers: one based on the average of Mr. March's actual earnings of $54,356 per year; the other

based on a contract Mr. March had obtained before his injury for compensation of $86,000 per year. With a base earning of $54,356 per year, the loss of earning capacity is $1,243,683 to age 65; $1,465,523 to age 70. With a base earning of $86,000 per year, the loss of earning capacity is $1,871,922 to age 65; $2,210,339 to age 70. Those calculations include appropriate deductions for taxes and are brought to present value. Dr. Crakes did additional deductions from the total economic loss to account for compounding of interest.

    **Citation:** Dr. Crakes Tr. 682-689.

## VII. <u>Non-Economic Damages</u>

37. Mr. March has a claim for past and future pain and suffering, scarring, disability and emotional distress. Mrs. March has a claim for loss of consortium. Their lives have been dramatically and permanently devastated by Mr. March's injuries. His recovery after Dr. Suede's surgeries was long and difficult. He has no abdominal musculature. His internal organs are protected only by an outer layer of skin. He has trouble with the most basic activities, including getting out of bed, dressing, bathing and walking. He often feels hopeless and depressed. Mrs. March has become his caretaker. They have no physical relationship and the physical, emotional and financial stress these injuries have placed on their marriage is enormous.

    **Citation:** **Testimony of Eric and Dina March; Exs 5-13 (medical records); Exs. 18-28 (photos and video).**

RESPECTFULLY SUBMITTED,
THE PLAINTIFFS

By: /s/ct01704
KATHLEEN L. NASTRI/ ct01704
KOSKOFF, KOSKOFF & BIEDER, PC
350 FAIRFIELD AVENUE
BRIDGEPORT, CT 06604
TEL./FAX: (203) 336-4421; (203) 368-3244
EMAIL: KNASTRI@KOSKOFF.COM

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ct01704
Kathleen L. Nastri